HCJV 115 & 135 Hoyt Ave. Owner LLC v Project Veritas (2024 NY Slip Op 51744(U))

[*1]

HCJV 115 & 135 Hoyt Ave. Owner LLC v Project Veritas

2024 NY Slip Op 51744(U)

Decided on December 20, 2024

Supreme Court, Westchester County

Giacomo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 20, 2024
Supreme Court, Westchester County

HCJV 115 & 135 Hoyt Avenue Owner LLC, Plaintiff,

against
Project Veritas, Defendant.

Index No. 55646/2024

Attorney for Plaintiff: 
Alfred E. Donnellan, Esq. 
Delbello Donnellan Weingarten Wise & Widerkehr, LLP
One North Lexington Ave, 11th Floor
White Plains, New York 10601
(914) 681 - 0200
Attorney for Defendant:
David Carey, Esq. 
8 Portland Place
Cold Spring Harbor, New York 11724
(631) 766-5581

William J. Giacomo, J.

In an action to recover damages for breach of contract, plaintiff HCJV 115 & 135 Hoyt Avenue Owner LLC moves pursuant to CPLR 3212, for summary judgment in its favor on the complaint. 
Papers Considered NYSCEF Doc. No. 5-24
1. Notice of Motion/Affirmation of Joel A. Halpern/Exhibits A-B/ Memorandum of Law
2. Affirmation in Opposition of David Carey, Esq./Exhibits A-B/ Affirmation of Joseph Barton/ Exhibits A-D
3. Affirmation of Joel A. Halpern in Reply/ Exhibits A-B/Memorandum of Law in Reply
FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff commenced this action by filing the summons and complaint on January 12, 2024. Defendant joined issue with the filing of its answer with affirmative defenses on March 27, 2024. 
Plaintiff is the owner of the commercial premises located at 135 Hoyt Avenue, [*2]Mamaroneck, New York. Plaintiff leased the premises to defendant, as tenant, pursuant to a five-year lease commencing on November 1, 2020 and ending on October 31, 2025. The lease provided for monthly rent payments, starting at $6,758.96 with an increase to $6,860.34 starting on November 1, 2024. As relevant here, pursuant to the lease, a tenant default included the failure to pay rent "on the date such payment is due (taking into account the cure period provided for herein) more than two (2) times in any twelve (12) month period, regardless of whether such late payment is timely cured." 
The complaint states that the defendant paid the rent late for eight months out of year, and that these late rent payments, even if and when they were ultimately paid, constituted a material breach of the terms of the lease. Plaintiff served defendant with a notice of termination letter dated December 21, 2023. Defendant vacated the premises in December 2023. 
The complaint alleges that plaintiff has been unable to secure another tenant for the premises, resulting a loss of monthly rent commencing from January 1, 2024, plus additional rent as provided for in the lease. Plaintiff alleges that it has also incurred damages in the form of increased marketing and advertising costs, and costs involved in remediating the premises, among other things. 
Plaintiff moves for summary judgment in its favor. In support of its motion, plaintiff submitted the affirmation of Joel A. Halpern, plaintiff's principal. Halpern states that defendant repeatedly failed to pay rent on time in 2023 and that defendant's late payments constitute a material breach of the terms of the lease. Halpern states that defendant has not made any rent payments since November 2023, leaving a balance due of $69,580.13 as of September 1, 2024 for outstanding rent under the lease. Halpern attached copies of the outstanding rent invoices. In sum, plaintiff argues that it should be granted summary judgment on its complaint grounded in breach of contract. 
Defendant opposes plaintiff's motion and requests the Court to search the record and dismiss the complaint. Defendant argues that the parties agreed to terminate their lease. In support, defendant submits the affirmation of Joseph Barton, defendant's previous interim chairman of the board of directors. Barton submits a December 4, 2023 email from plaintiff, who was allegedly memorializing this agreement as follows: "We will draft up a Termination and Surrender agreement and get it over to you shortly for review. Our records indicate an open outstanding balance of $29,130.89 ($4,888 open on 115 Hoyt and $24,242.89 on 135 Hoyt). We look forward to having this brought current by 12/8."
On or about December 7, 2023, defendant paid plaintiff $29,130.89. Defendant claims that plaintiff agreed to accept payment of the rent arrears of $29,130.89 as full settlement of defendant's obligations under the lease. Plaintiff drafted a lease termination agreement and emailed it to defendant on December 12, 2023. The lease termination agreement set forth, in relevant part:
"Termination: Landlord and Tenant hereby acknowledge and agree that the Lease is hereby terminated immediately, deemed null and void, and henceforth shall be of no further force or effect. Landlord and Tenant further agree that Tenant shall vacate the Demised Premises and surrender the Demised Premises to Landlord by December 31, 2023 ('Surrender Date'). Tenant shall not remove any of the fixtures, equipment, or Tenant Work within the Demised Premises owned by Tenant (whether or not attached to or built into the Demised Premises), including, without limitation, all furniture within the Demised Premises and all hard keys for access to the Demised Premises.
"3. Consideration: In consideration for the payment by Tenant to Landlord of $24,242.89 (the 'Termination Payment') the Landlord agrees to terminate the Lease. The Landlord is holding a deposit of $6,463.70 which shall be retained by Landlord as liquidated damages for unpaid rent. Tenant is relieved from all future rent obligations."
The lease termination agreement was emailed to defendant, with spaces for both defendant and plaintiff to sign and execute. However, defendant did not return the signed agreement. Barton states that defendant complied with the termination agreement by paying the arrears, leaving furniture behind, and surrendering by December 31, 2023. Barton states that, notably, plaintiff did not return the termination agreement or rescind it. Defendant relies on the language in the termination agreement stating that the tenant is relieved from all future rent obligations. Barton claims that, until it was served with the complaint in the matter, defendant was unaware that plaintiff was attempting to withdraw the termination agreement.
Given the events that transpired, defendant argues that it understood that the termination payment, coupled with the surrender of the space, would end its obligations under the lease. Further, there was no language in plaintiff's email or in the lease termination agreement requiring that the lease termination agreement be fully executed or signed. Plaintiff did not reject the payments made nor did it rescind the termination agreement. Thus, according to defendant, it is relieved from all future rent obligations. 
In reply, plaintiff submits the notice of termination letter it served on defendant on December 21, 2023. It states that the lease could not be modified from its terms absent a written, signed, and delivered agreement from both plaintiff and defendant. Here, it is undisputed that there is no signed and delivered written agreement modifying the lease terms. Although the parties exchanged numerous emails, no agreement was ever met with respect to the early termination of the lease. In support of this contention, plaintiff submits an affirmation from Halpern. In brief, Halpern states that, as evidenced in the email exchanges, defendant claimed that it was inevitably filing for bankruptcy. Relying on this statement, plaintiff contemplated a termination agreement. However, by email dated December 12, 2023, defendant's counsel refused to provide plaintiff with its bankruptcy counsel's information. He states that, "[u]ltimately, the lack of transparency by Defendant with respect to their purported bankruptcy plan, resulted in a breakdown of any discussions concerning an early termination agreement, and Plaintiff terminating the Lease for cause in accordance with the terms of the Lease on December 21, 2023." In addition, the email exchange indicates that the "outstanding rent being paid was a precursor to any early lease termination discussions and was paid by Defendant before any proposed agreement was ever even drafted." 
DISCUSSION
Summary Judgment
A party seeking summary judgment has the burden of tendering evidentiary proof in admissible form to demonstrate the absence of material issues of fact. Alvarez v Prospect Hosp., 68 NY2d 320, 324 (1986). In determining a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Boulos v Lerner-Harrington, 124 AD3d 709, 709 (2d Dept 2015). Failure to make such showing requires denial of the motion, regardless of the sufficiency of the opposing papers. Winegrad v NY Univ. Med. Ctr., 64 NY2d 851, 853 (1986).
"Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action." Alvarez v Prospect Hosp., 68 NY2d at 342. "The function of the court on a motion for summary judgment is not to resolve issues of fact or determine matters of credibility, but merely to determine whether such issues exist." Kolivas v Kirchoff, 14 AD3d 493, 493 (2d Dept 2005). 
Breach of Contract
The essential elements of a cause of action to recover damages for breach of contract are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of its contractual obligations, and damages resulting from the breach. Investment Retrievers, Inc. v Fox, 150 AD3d 1090, 1090 (2d Dept 2017). 
Here, plaintiff established its prima facie entitlement to summary judgment on its breach of contract claim by submitting evidence of a contract, or lease, with defendant, that it performed under the contract by providing the premises for tenant's occupancy, and that the tenant breached the lease by repeatedly failing to pay rent on time in accordance with the provisions in the lease. The damages started to accrue on January 1, 2024 and continue to accrue until the lease termination date of October 31, 2025 or upon the re-leasing of the premises. 
Defendant's claims that the parties entered into a termination agreement and that it is relieved of all future rent obligations, fail to raise a triable issue of fact. It is well settled that "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms." Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 559-560 (2014) (internal quotation marks and citations omitted). Pursuant to Section 20.4 of the Lease, "[e]xcept as provided in this Lease, no modification of this Lease shall be binding on Landlord or Tenant unless in writing and signed by and delivered by both Landlord and Tenant." It is undisputed that the lease termination agreement, although emailed to defendant, was never "in writing and signed by and delivered by both Landlord and Tenant." As a result, any other purported lease termination agreement reflected in the record did not nullify or modify the terms of the original lease. 
Defendant argues that the performance of the parties demonstrated their agreement to terminate the lease. Courts have held that "an alleged oral modification is enforceable if there is part performance that is unequivocally referable to the oral modification. In order to be unequivocally referable, conduct must be inconsistent with any other explanation." Vogel v Vogel, 128 AD3d 681, 683-684 (2d Dept 2015) (internal quotation marks and citations omitted). Here, however, in opposition to plaintiff's motion, defendant failed to allege acts of part performance that were "unequivocally referable to the alleged oral agreement to modify the terms of the parties' [termination] agreement sufficient to obviate the need for a writing." Id. at 684. Defendant submits several emails between the plaintiff and defendant, whereby the parties attempted to negotiate a lease termination. However, the record is clear that these emails were merely negotiations. In addition, the timeline also indicates that defendant sent over its outstanding rent due even prior to receiving the termination agreement. This amount was different from the amount listed in the termination agreement. 
Finally, defendant's claim that it was unaware the lease termination agreement was never accepted/entered into, is belied by the record, as defendant was served on December 21, 2023 with a lease termination letter. Accordingly, for the reasons set forth above, plaintiff is granted summary judgment in its favor.
All other arguments raised on this motion and evidence submitted by the parties in connection thereto have been considered by this court notwithstanding the specific absence of reference thereto.
CONCLUSION
Accordingly, it is hereby
ORDERED that plaintiff's motion for summary judgment on its underlying complaint for breach of contract is granted.
The parties are directed to appear for an inquest in person on January 14, 2025 at 10:00 a.m. in Courtroom 102. Plaintiff should submit proof of the damages alleged, representing lost rent, additional marketing costs and damages associated with remediating the premises, on notice, by January 7, 2025. Although plaintiff has been granted summary judgment on liability, at the inquest, defendant will be able to contest the amount of damages owed. 
Dated: December 20, 2024
White Plains, New York
HON. WILLIAM J. GIACOMO, J.S.C.